U.S. COURTS

FEB 1 0 2023

Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

Jason Marcus
Georgia Bar No. 949698
Bracker & Marcus LLC
3355 Lenox Rd., Suite 660
Atlanta, Georgia 30326
T: (770) 988-5035
F: (678) 648-5544
Jason@FCACounsel.com

Deborah A. Ferguson, ISB No. 5333
Ferguson Durham, PLLC
223 N. 6th Street, Suite 325
Boise, Idaho 83702
T: (208) 484-2253
F: (208) 906-8663
daf@fergusondurham.com

Attorneys for Plaintiff Sidesolve LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

UNITED STATES OF AMERICA
ex rel. SIDESOLVE LLC,

    Plaintiff-Relator,

v.

STINKER STORES INC.;
STINKER STORES CO, INC.;
DAVIS-JONES, INC. d/b/a
ARROWROCK SUPPLY;
CJSD HOLDINGS, INC.;
WESTPOINT TRANSPORTATION; and
CHARLEY JONES,

    Defendants.

)
)
)
)
)
)
) Case No. 1:23 cv 43 -REP
)
)
) **COMPLAINT**
) **JURY TRIAL DEMANDED**
) **FILED UNDER SEAL**
)
)
)
)
)
)
)



FEE PAID
R/#31104

1.     Relator Sidesolve LLC brings this action on behalf of itself and the United States of America against defendants Stinker Stores Inc.; Stinker Stores Co, Inc.; Davis-Jones, Inc. d/b/a Arrowrock Supply; CJSD Holdings, Inc.; and Westpoint Transportation (collectively "Stinker Store Entities") and their owner Charley Jones for violations of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

2.     This action seeks to recover funds that were loaned to Defendants through the federal Government's Paycheck Protection Program ("PPP") and forgiven as a result of false applications.

3.     Sidesolve LLC is a company that uses data to investigate large-scale corporate fraud. Its goal is to use the technology it is developing to protect individuals on private healthcare plans. It is currently developing its technology using public databases. It uses computational statistics to match entities across multiple resources such as databases, social media, corporate filings, and other sources. From this broader picture, it finds fraud leads, which it follows up with a more traditional manual investigation. In sum, Sidesolve LLC uses its expertise and proprietary technology to both collect the scattered pieces of the fraud puzzle and also to put them together into a complete picture of the alleged fraud.

4.     While searching for potential PPP loan fraud in data released by the SBA, Sidesolve came across Stinker Stores and four affiliated entities—owned and operated by the same individual—which had applied for PPP loans totaling

nearly $6 million. All five loans, plus interest, were forgiven in their entirety.

5.    Had the Stinker Store Entities properly applied the SBA's Affiliation Rules for PPP loans — the purpose of which is to prevent exactly this sort of "unbundling" of companies to circumvent PPP requirements — these entities would not have been eligible for any PPP funding.

6.    The Stinker Store Entities received a windfall, to the detriment of the federal government and the thousands of small businesses that were unable to get the financial assistance they badly needed during the pandemic.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331, 1345.

8.    Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 31 U.S.C. § 3732(a), as one or more of the defendants resides or transacts business in this jurisdiction and violations of the False Claims Act described herein occurred in this district.

## PARTIES

9.    Stinker Stores is a chain of gas stations in Idaho, Colorado, and Wyoming. According to the Stinker Stores website:

> Stinker was founded in 1936 by Farris Lind. The first store was a service station in Twin Falls, Idaho. Stinker has grown over the years and operates convenience stores and truck stops throughout Idaho. We employ

around 1000 people and we are constantly looking to
add motivated and talented individuals to the Stinker
Team. In addition to Stinker convenience stores, the
Stinker family of companies includes Arrowrock
Supply and Westpoint Transportation. Arrowrock
Supply is a tobacco and grocery wholesale distribution
company serving Stinker and other retailers throughout
Idaho. Westpoint Transportation is a trucking company
specializing in the transportation of motor fuels and
petroleum products in Idaho, Washington, Oregon,
Nevada, Utah, Wyoming, and Montana.

10.    According to a 2015 online article on cstoredecisions.com that included

interviews with Stinker Store leadership:

> WestPoint Transportation and Arrowrock Supply are
> affiliated businesses owned and managed by Stinker.
> WestPoint hauls fuel for Stinker locations, which are
> spread out over 650 miles of Idaho, as well as transports
> petroleum products for customers in Idaho, Montana,
> Nevada, Oregon, Utah, Washington and Wyoming.
> Arrowrock Supply is a tobacco and grocery wholesale
> distribution company, serving Stinker and other
> retailers throughout Idaho. This distributor, which
> operates a commissary, enables Stinker to stock fresher
> foodservice items despite the long distance between
> many stores.

11.    Stinker Stores is now owned by Charley and Nancy Jones after co-owner

Shawn Davis sold his share of the company to Charley Jones in 2012. Charley

Jones is a CPA who began his career working for Deloitte.

12.    Defendant Stinker Stores Inc. is registered as a corporation in Idaho. Its

principal address is 3184 W Elder St., Boise, ID 83705. In corporate filings with

the Idaho Secretary of State, filed in April 2019, Charley Jones was listed as its

President, Treasurer and Director, and Nancy Jones was listed as its Vice President and Secretary.

13.     Defendant Stinker Stores Co, Inc. is registered as a corporation in Wyoming. Its principal address is 3184 W Elder St., Boise, ID 83705. It In corporate filings with the Wyoming Secretary of State, filed in September 2019, Charley Jones was listed as its President and Nancy Jones was listed as its Vice President and Secretary.

14.     Defendant Davis-Jones, Inc. d/b/a Arrowrock Supply is registered as a corporation in Idaho. Its principal address is 3184 W Elder St., Boise, ID 83705. In corporate filings with the Idaho Secretary of State, filed in June 2018, Charley Jones was listed as its President, and Nancy Jones was listed as its Vice President and Secretary. In August 2019 filings, Charley Jones was listed as its President, Secretary, and Director; Nancy Jones was listed as its Vice President and Secretary; and Shawn Davis was listed as its Director and Secretary. A 2020 filing listed only Charley Jones as President.

15.     Defendant CJSD Holdings, Inc. is registered as a corporation in Idaho. Its principal address is 3184 W Elder St., Boise, ID 83705. In corporate filings with the Idaho Secretary of State, filed in October 2018, Charley Jones was listed as its President and Director, and Nancy Jones was listed as its Vice President and Director. CJSD failed to file its 2019 annual report with the State of Idaho, but it

applied for reinstatement on April 9, 2020, two days before it was approved for a PPP loan.

16.     Defendant Westpoint Transportation is registered as a corporation in Oregon. Its principal address is 3184 W Elder St., Boise, ID 83705. In corporate filings with the Idaho Secretary of State, filed in February 2019, Charley Jones was listed as its President, and Nancy Jones was listed as its Vice President and Secretary.

## THE PAYCHECK PROTECTION PROGRAM

17.     During the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Section 1102 of the CARES Act contains a program called the Paycheck Protection Program ("PPP"), a program administered by the U.S. Small Business Administration ("SBA") to provide economic relief to small businesses nationwide adversely impacted by the coronavirus pandemic.

18.     Section 1102 of the CARES Act temporarily permitted SBA to guarantee 100% of the PPP loans. Section 1106 of the CARES Act provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

19.     The CARES Act gives lenders delegated authority to process loan applications for PPP funding. SBA allowed lenders to rely on certifications of the borrowers in order to determine eligibility of the borrower and use of loan

proceeds, and to rely on specified documents provided by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness.

20.     Lenders were compensated by the federal government via processing fees based on the balance of the financing outstanding at the time of final disbursement, in the following amounts:

- Five (5) percent for loans of not more than $350,000;

- Three (3) percent for loans of more than $350,000 and less than $2,000,000; and

- One (1) percent for loans of at least $2,000,000.

21.     Borrowers had to submit documentation necessary to establish eligibility such as payroll processor records, payroll tax filings, form 1099s, income and expenses documentation.

22.     In general, the maximum amount borrowers could borrow was calculated by aggregating payroll costs from the previous year, with annual employee salaries capped at $100,000. The borrower then calculated the average monthly payroll cost and multiplied that amount by a factor of 2.5.

23.     Each borrower certified on the First and Second Draw loan applications that they were eligible to receive the loans under the program guidelines and that their applications and supporting documentation were accurate.

24.     Borrowers were able to seek forgiveness of the loans if the funds were

used for eligible payroll costs, payments on business mortgage interest

payments, rent, or utilities.

## FACTUAL ALLEGATIONS

25.     Five Stinker Store Entities applied for and received First Draw PPP loans,

from the same bank, four of which were submitted on the same date.

26.     Stinker Stores, Inc. was approved for a First Draw PPP loan of $3,145,500

on April 11, 2020 by Zions Bank. It reported 495 jobs. The entire loan amount,

plus interest, was forgiven, totaling $3,206,086, on or about March 21, 2022.

27.     Stinker Stores CO, Inc. was approved for a First Draw PPP loan of

$1,742,200 on April 11, 2020 by Zions Bank. It reported 231 jobs. The entire loan

amount, plus interest, was forgiven, totaling $1,775,755, on or about March 21,

2022.

28.     Davis-Jones, Inc. was approved for a First Draw PPP loan of $192,300 on

April 11, 2020 by Zions Bank. It reported 18 jobs. The entire loan amount, plus

interest, was forgiven, totaling $195,967, on or about March 21, 2022.

29.     CJSD Holdings, Inc. was approved for a First Draw PPP loan of $442,700

on April 11, 2020 by Zions Bank. It reported 28 jobs. The entire loan amount, plus

interest, was forgiven, totaling $451,142, on or about March 21, 2022.

30.     Westpoint Transportation, Inc. was approved for a First Draw PPP loan of

$331,300 on April 16, 2020 by Zions Bank. It reported 22 jobs. The entire loan

amount, plus interest, was forgiven, totaling $337,626, on or about March 21, 2022.

31.    In total, the Stinker Store Entities received $5,854,000 in PPP funding. The entire amounts were forgiven, including interest, for total forgiveness of $5,966,576.

32.    Version one of the First Draw PPP Borrower Application Form, effective April 2, 2020, required the applicant to certify in good faith that, inter alia:

   a. The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).

   b. The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees [sic] or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.

   c. During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

   d. I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured

institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

33.    Some or all of the above PPP certifications were false when made by the Stinker Store Entities affiliates because they applied for and received five PPP loans when they collectively were not eligible to receive PPP funding.

34.    Moreover, the Stinker Stores, Inc.'s application for 495 jobs is suspiciously close to the 500 employee limit, and evidence suggests that this number may have been false.

## A. **THE AFFILIATION RULES**

35.    In addition to small business concerns, a business was eligible for a First Draw PPP Loan if the business had 500 or fewer employees **or** the business met the SBA employee-based or revenue-based size standard for the industry in which it operates (if applicable).

36.    When multiple entities are operated under common ownership or management, the SBA generally applies "affiliation rules" that require the various entities to consolidate their employee and revenue count when evaluating their loan eligibility. Their purpose is to capture exactly the situation we appear to have with the Stinker Store Entities, where a single entity owns and operates multiple subsidiaries.

37.    All of the Stinker Store Entities qualify as "affiliates" under the SBA's Affiliation Rules for PPP Loans, codified at 13 C.F.R. § 121.301(f), under the

ownership and/or management tests.

38.     The "affiliation based on ownership" test states that:

> For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern.

39.     The "affiliation based on management test" states that:

> Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement.

40.     At all relevant times, upon information and belief, Charley Jones—possibly in conjunction with his wife, Nancy Jones—was the sole or majority owner and operator of each company.

41.     Corporate filings with various Secretary of State offices routinely denote Charley Jones as President and Director, and Nancy Jones as Vice President, Secretary, and Director.

42.    A third affiliation test, the "identity of interest test," applies where there is an identity of an identity of interest between close relatives—including spouses—"with identical or substantially, identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area)."

43.    Thus, even if Nancy were determined to be the majority owner and manager of one or more of the Stinker Store Entities, they would still be affiliated with those owned and managed by Charley Jones because they have substantially identical business interests.

44.    Three of the Stinker Store entities operate Stinker convenience stores, one is a fuel distributor for the Stinker convenience stores, and one is a grocery and tobacco distributor for the Stinker convenience stores.

## B. AFFILIATION RULE WAIVER REQUIREMENTS

45.    Accordingly, to qualify as a small business eligible for a PPP loan, one or more of the Stinker Store Entities would have to meet one of three affiliation rule waiver requirements.

46.    At least two of the three waivers to the affiliation rules do not apply: none of the entities are assigned a NAICS code beginning with 72, nor have any been assigned a franchise identifier code.

47.    The third waiver applies where a business "receives financial assistance

from a company licensed under section 301 of the Small Business Investment Act of 1958," i.e., a "small business investment company." "Financial assistance" includes any type of financing listed in 13 C.F.R. § 107.50, including loans and equity.

48.     Sidesolve has not found any evidence that any of the Stinker Store Entities have received any SBIC lending. For example, it has not located mention of them in any SEC EDGAR filings, news reports, or press releases.

## C. APPLICATION OF THE AFFILIATION RULES

49.     Businesses could qualify for a First Draw PPP loan under any of three size standards. First, the employee-based size standard permitted businesses to apply for loans if they had no more than 500 employees, or the business met the SBA employee-based standard for the industry in which it operates (if applicable). Second, the business could meet the revenue-based size standard, meaning the average annual receipts for the previous three full fiscal years is less than the revenue-based threshold established by the NAICS Code for the applicant's industry. Third, the business could meet the SBA's alternative size standard, which requires that the maximum tangible net worth of the business is not more than $15 million **and** average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

*Employment Test*

50.    The Stinker Store Entities do not qualify for PPP loans under the employment test. They fall under NAICS codes 447110, 424940, and 484220, which have employee size standards under 500 employees or do not have one at all. Thus, the PPP program's baseline of no more than 500 employees applies.

51.    Collectively, the Stinker Store Entities reported 794 jobs.

52.    Stinker Stores, Inc. reported 495, just slightly below the 500 employee limit.

53.    Evidence suggests that this was a false, deflated number used to qualify for a PPP loan.

54.    On July 7, 2019, seemingly referring only to the Stinker convenience stores, the Stinker Stores website reported that the company employed "over 500 people." By March 11, 2021, it was reporting that it employs "around 1,000 people."

55.    An April 30, 2019 article in the Idaho Statesman similarly reported that Stinker Stores "employs more than 1,000 people at 65 stores in Idaho, 39 in Colorado and one in Wyoming."

56.    A February 16, 2018 article published on the Zions Bank website, discussing an award that it had given to Stinker Stores, similarly reported "more than 1,000 employees."

57.    The website for the City of Boise, Idaho has reported since at least

-14-

December 2020 that Stinker Stores "employs 650 people across Idaho."

*Revenue Test*

58.    Upon information and belief, the Stinker Stores Entities also would not qualify under the revenue-based size standards or the SBA's alternative size standard (maximum tangible net worth is not more than $15 million; and average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million).

59.    NAICS code 447110, Gasoline Stations with Convenience Stores, applies to Stinker Stores, Inc.; Stinker Stores CO, Inc.; and CJSD Holdings, Inc. It has a revenue size standard of $32 million in annual receipts.

60.    NAICS code 484220, Specialized Freight (except Used Goods) Trucking, Local, applies to Westpoint Transportation, Inc. It has a revenue size standard of $30 million in annual receipts.

61.    NAICS code 424940, Tobacco and Tobacco Product Merchant Wholesalers, applies to Davis-Jones, Inc. It has no revenue size standard.

62.    "Annual receipts" is defined as the "total income" (or "gross income") plus the "cost of goods sold." Receipts are averaged over a business' latest three complete fiscal years to determine the average annual receipts.

63.    Stinker Stores has been immensely successful and continues to grow year

over year, including acquiring 41 locations in early 2017.

64.     With approximately 105 locations, it would have to average only about $300,000 per location to top the $32 million standard. That is before adding the revenues of Westpoint Transportation—its petroleum trucking company—and Davis-Jones, Inc.—its tobacco and grocery wholesaler.

65.     Websites like RocketReach, Glassdoor, ZoomInfo, and Buzzfile estimate annual revenues of $100 million to $500 million.

## D. CONCLUSION

66.     Although it consisted of different legal entities, the Stinker Stores Entities were a single enterprise.

67.     Accordingly, upon information and belief, Defendants did not meet the requirements for eligibility under the PPP loan program, and they should be required to repay the nearly $6 million they received, plus the processing fees paid by the Government.

68.     In its applications, the Stinker Stores Entities made false statements material to the PPP lending decisions.

69.     Insofar as the affiliate rules could have been considered unclear at the time, the Stinker Stores Entities applied for the First Draw PPP Loans, subsequent clarifications issued by the SBA should have informed it that it had improperly applied for and received PPP funds so that it should have repaid

those funds. Instead, the Stinker Stores Entities not only kept the PPP funds, but it applied for and received forgiveness for those funds under false pretenses.

## COUNT I
## VIOLATIONS OF 31 U.S.C. § 3729 – FALSE CLAIMS ACT

70.    Relator hereby incorporates and realleges all other paragraphs as if fully set forth herein.

71.    As set forth above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

72.    As set forth above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

73.    As set forth above, Defendants knowingly conspired to commit a violation of the False Claims Act, in violation of 31 U.S.C. § 3729(a)(1)(C).

74.    As set forth above, Defendants knowingly made, used, or caused to be made or used a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).

75.     Due to Defendants' conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim, record, or statement. 31 U.S.C. § 3729.

76.     Relator is entitled to reasonable attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d)(1).

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against Defendants:

(a) awarding the United States treble damages sustained by it for each of the false claims;

(b) awarding the United States a maximum civil penalty for each of the false claims and statements;

(c) awarding Relator the maximum relator's share of the proceeds of this action and any alternate remedy or the settlement of any such claim;

(d) awarding Relator litigation costs and reasonable attorneys' fees and expenses; and

(e) granting such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Relator hereby respectfully demands trial by jury on all issues and counts triable as of right before a jury.

Respectfully submitted,

Jason Marcus (pro hac vice pending)
Georgia Bar No. 949698
Bracker & Marcus LLC
3355 Lenox Rd., Suite 660
Atlanta, Georgia 30326
T: (770) 988-5035
F: (678) 648-5544
Jason@FCACounsel.com